GREEN, J.
No court of justice, in the exercise of a sound discretion, could have imposed any fine whatever upon a sheriff, under the circumstances of the case upon Calvert’s motion for the benefit of Parham against Chapman, if the facts now appearing, had been before it. The statute authorizing the imposition of fines upon officers failing to make due returns of executions, does not imperiously require that they shall be imposed in all possible cases of such failure, but leaves that (as it was at common law) to the sound discretion of the court, to be exercised in reference to the circumstances of each particular case; going beyond the common law only so far as to impose a limit upon the amount of the fines, and giving them to the party injured instead of the public. M’Dowell v. Burwell’s ex’ors, 4 Rand. 317. In this case, Calvert, in whose name the motion against Chapman, the sheriff, was made, was not injured, nor ■was his testator, by the failure to return the execution in question ; for the amount of the execution was satisfied to one or the other of them soon after the return day, and six years before the motion was made, out of the property of the debtor, by an arrangement sanctioned by him, if not made with his approbation. Neither the plaintiff in the execution, nor his executor ever complained of the failure to return the execution : for though the motion against the high sheriff was made in the name of the latter, it was done without his authority or consent, by Parham, *the debtor in the execution, for his own benefit, under an idea, that he being a party injured by the failure to return the execution, was substituted by law to the rights of the plaintiff, as against the sheriff. If it were true, that Parham was a party thereby injured, that fact, surely, could not lay the foundation of a recovery in the name of Calvert, who had suffered no injury, for his benefit; whether it would, or would not, have enabled him to recover by motion for a fine in his own name. The idea of substitution was unfounded, even if a court of law had the power of a court of equity on that subject ; since the plaintiff in the execution having received full satisfaction, had no rights against the sheriff to which any one could be substituted. I can see the inducement that led Parham to take this strange course. The execution in question was against Parham and Wallace his surety, and was delivered to Fletcher, one of Chapman’s deputies ; Wallace was also a deputy, and Fletcher handed the execution to him. Parham in his answer to Chapman’s bill in chancery, affirms that he paid the amount of the execution to Wallace, but he does not prove that affirmative allegation not responsive to Chapman’s bill. He says too, that he confided an execution in his favor to Wallace, to be delivered for him to the sheriff of Southampton, and that Wallace appropriated a part of the proceeds of that execution to the discharge of Calvert’s execution against him and Wallace, without his assent; but the payment in that way, is not only fully proved, but proved to have been made with the approbation or sanction of Parham. Thus Wallace was indebted to him according to his account to the amount of Calvert’s execution, he having virtually paid it once to the plaintiff, and once to Wallace. And his scheme was, six years after the transaction, and after Wallace was dead, to charge this upon the sheriff, as an official transaction on the part of Wallace his deputy; but instead of pursuing that claim, directly in his own name, he resorted to the extraordinary contrivance of using (upon the notion of a legal substitution) the name of his creditor v« ho ':iwas satisfied, but not more than satisfied, to get it of the sheriff, in the shape of fines for not returning the execution ; and succeeded in getting the judgment for more than four times the amount of the execution.
With a full knowledge of all these facts, and with full proof of them in his power, the high sheriff made no defence; and a judgment was rendered against him, erroneous in point of law, being given upon a notice of nine days only. He then sought relief in equity upon the double ground of surprize, and upon the merits, (which he stated fully, and proved completely,) but failed in getting any relief. He then obtained a supersedeas to the judgment, which was affirmed by the circuit court; and he thereupon acquiesced in the judgment (Parham releasing all but 200 dollars of the fine) though manifestly erroneous in a ,point of which he was fully informed," as well as in the result of the suit in chancery, though that also was erroneous, if he really had a good excuse for failing to defend himself at law.
If this case depended upon the prin *432 ciples of the common law, we could not hesitate to say, that such proceeding's to which Fletcher was no party, and of which he does not appear to have had any notice, could not bind or affect him in any way, except to prove the fact that, they existed. But we have a statute (upon which, I have no doubt, the judgment appealed from, was founded) providing “That when any fine &c. has been or may be assessed- &c. against any sheriff &c. for the default or misconduct of his deputy, it shall and may be lawful for the court, to give judgment against the deputy, his heirs, executors &c. for the full amount thereof against the deputy, upon motion &c.” I cannot think that this statute imperatively requires the court to give judgment against the deputy, in all cases in which a judgment has been rendered against his principal, founded upon the deputy’s alleged default, for the full amount of such judgment, without regard to the question, whether such a default had existed, as would be a just foundation for any fine against the principal, or to the default and neglect *of the principal to make a defence, of which he was apprised, and which would have been effectually available, or to give notice to his deputy so as to enable him to make that defence for him. Such a construction would, in effect, prevent the inquiry, whether the deputy had been in default or not; and would take away the discretion, implied in the declaration, that it shall and may be lawful for the court to give judgment &e. contrary to the principles of the common law. If such be the intention explicitly declared by the statute, it must be carried into effect according to its literal terms, no matter how flagrant the wrong inflicted by ic. But if it is in any degree equivocal in those points, we are bound to construe it according to the reason of the common law, as near as may be ; 19 Vin. abr. Statutes, B). 6, p; 512, and the cases there cited. This statute is equivocal in those particulars : and I am of opinion, that the intention of the legislature was only to give a summary remedy by motion in lieu of the common law action, and to extend it (contrary to the common law maxim that personal actions die with the person) to the heirs and executors, of the party offending.
The other judges concurred.
Judgment was reversed, and judgment entered for appellant.